IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CR-179-D-1
No. 7:21-CV-96-D

| | |
|---|---|
| DONOVAN QUECELL MILLER | ) |
| Petitioner and Defendant, | ) |
| v. | ) **ORDER** |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

On May 24, 2021, Donovan Quecell Miller ("Miller") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 64-month sentence [D.E. 53]. On July 6, 2021, the government moved to dismiss Miller's section 2255 motion [D.E. 61] and filed a memorandum in support [D.E. 62]. On July 7, 2021, the court notified Miller of the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 63]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). Miller did not respond.

On May 17, 2021, Miller moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 49]. On February 4, 2022, Miller, through counsel, filed a memorandum in support [D.E. 64]. On March 11, 2022, the government responded in opposition [D.E. 68] and filed documents in support [D.E. 69]. As explained below, the court grants the government's motion to dismiss, dismisses Miller's section 2255 motion, and denies Miller's motion for compassionate release.

I.

On May 21, 2020, pursuant to a plea agreement, Miller pleaded guilty to possession with intent to distribute a quantity of marijuana (count two), and possession of a firearm in furtherance of a drug trafficking crime (count three). See [D.E. 31, 34]; Rule 11 Tr. [D.E. 58] 35–36. On September 18, 2020, the court held Miller's sentencing hearing, adopted the facts set forth in the Presentence Investigation Report ("PSR"), and resolved Miller's objection. See [D.E. 44, 46]. The court found Miller's total offense level to be 8, his criminal history category to be II, and his advisory guideline range to be four to ten months' imprisonment on count two and a consecutive 60 months' imprisonment on count three. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Miller to four months' imprisonment on count two and 60 months' consecutive imprisonment on count three, for a total of 64 months' imprisonment. See [D.E. 44, 46]. Miller did not appeal.

II.

In Miller's section 2255 motion, Miller argues that (1) he received ineffective assistance of counsel because his counsel misinformed him of the elements necessary to prove possession of a firearm in furtherance of a drug trafficking crime and thereby rendered his guilty plea not knowing and voluntary; and (2) he is actually innocent of possession of a firearm in furtherance of a drug trafficking crime as charged in count three. See [D.E. 53] 4–7; [D.E. 53-1] 3–5; [D.E. 53-2].

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v.

2

Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 137 S. Ct. 1958, 1964–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Miller must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984).

When determining whether counsel's representation was objectively unreasonable, a court

3

must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Lee, 137 S. Ct. at 1967. "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 137 S. Ct. at 1967 (citations and quotation omitted).

Miller argues he received ineffective assistance of counsel based on counsel's advice about the elements of the charge of possession of a firearm in furtherance of a drug trafficking crime in count three, and therefore his guilty plea to that charge was not knowing and voluntary. Miller's sworn statements during his Rule 11 proceeding contradict this claim, and Miller's sworn statements bind him. See, e.g., Blackledge, 431 U.S. at 74; United States v. Moussaoui, 591 F.3d 263, 299–300 (4th Cir. 2010); United States v. Lemaster, 403 F.3d 216, 221–23 (4th Cir. 2005). At his Rule 11 hearing, while under oath, Miller confirmed he had discussed his case with his lawyer, was fully satisfied with counsel's services, and had received a copy of his indictment. See Rule 11 Tr. at 15–16, 28. The court read the charges in the indictment to Miller, including the elements of count three, and Miller confirmed that he understood the charges. See id. at 21–24, 27. Miller also confirmed that he had read, understood, discussed with counsel, and signed the plea agreement,

4

which also listed the elements of each charge, including count three. See id. at 30–31; Plea Agr. [D.E. 34] 4. The court read the elements of count three to Miller, and Miller confirmed he understood that in order to convict him on count three at a jury trial, the government would have to prove each element by competent evidence beyond a reasonable doubt. See Rule 11 Tr. at 24–28. Miller then pleaded guilty to counts two and three and confirmed that he had, in fact, committed the offenses. See id. at 35–39. Accordingly, Miller's guilty plea to count three was knowing and voluntary. Moreover, in light of Miller's guilty plea, the government's proffer at the Rule 11 hearing, and the description of Miller's conduct in the PSR, Miller has not plausibly alleged actual innocence. See Bousley v. United States, 523 U.S. 614, 622–24 (1998); United States v. Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010); United States v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999); PSR ¶¶ 8–10.

As for counsel's performance, Miller has not plausibly alleged deficient performance. Based on Miller's sworn admissions at his Rule 11 hearing, the government's proffer at Miller's Rule 11 hearing about Miller's conduct, and Miller's sworn admission that he committed count three, counsel's advice about count three was within the wide range of acceptable professional conduct. See Rule 11 Tr. at 36–38; Strickland, 466 U.S. at 691 ("Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant."); United States v. Moody, 2 F.4th 180, 192 (4th Cir. 2021); United States v. Lomax, 293 F.3d 701, 706 (4th Cir. 2002).

Alternatively, even if counsel did not correctly explain the elements of count three to Miller before he pleaded guilty to count three, Miller has not plausibly alleged prejudice. The court corrected any such alleged error during the Rule 11 hearing, and Miller then pleaded guilty to count three. See United States v. Akande, 956 F.3d 257, 263 (4th Cir. 2020); United States v. Akinsade, 686 F.3d 248, 253–54 (4th Cir. 2012). Moreover, in light of his Rule 11 hearing, Miller has not

5

plausibly alleged prejudice because he has not plausibly alleged that but for counsel's alleged error, he would have "insisted on going to trial." Hill, 474 U.S. at 59; see Lee, 137 S. Ct. at 1967–69; Strickland, 466 U.S. at 694. Accordingly, the claim fails.

After reviewing the claims presented in Miller's section 2255 motion, the court finds that reasonable jurists would not find the court's treatment of Miller's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

Miller moves for compassionate release under the First Step Act. See [D.E. 49]. On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and

6

must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

7

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. §

---

>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., United States v. Hargrove, No. 20-7709, 2022 WL 905436, at *3–4, 7–8 (4th Cir. Mar. 29, 2022); McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

In his motion for compassionate release, Miller claims that he has satisfied the exhaustion requirement. See [D.E. 49-1] 2, [D.E. 64] 3. The government has not invoked section 3582's exhaustion requirement. Cf. United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021). Accordingly, the court addresses Miller's motion on the merits.

Miller seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Miller cites the COVID-19 pandemic, his medical conditions (i.e., sarcoidosis, asthma, and obesity),[2] his rehabilitation, and his supportive family. See [D.E. 64] 1–7; [D.E. 49-1] 4–6. As for

---

[2] The government disputes that Miller has asthma or is obese. See [D.E. 68] 3. The court assumes without deciding that Miller has asthma and is obese.

9

the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Miller argues that his sarcoidosis, asthma, and obesity place him at heightened risk of serious infection from COVID-19. See [D.E. 49] 4; [D.E. 64] 2. Beyond arguments about the spread of COVID-19 within BOP generally and FCI Williamsburg specifically, however, Miller does not argue he is unable to manage his medical conditions while incarcerated or that the BOP is not treating his medical conditions.

Miller has received two doses of a COVID-19 vaccine, which greatly diminishes his risk of serious infection from COVID-19, even in light of his medical conditions. See [D.E. 69] 93; see, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying

10

compassionate release), petition for cert. filed, No. 21-6594 (U.S. Dec. 15, 2021); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); see also United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Accordingly, reducing Miller's sentence does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Miller's medical conditions, and Miller's rehabilitation efforts are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the wide availability of COVID-19 vaccines greatly diminish the risk to Miller from COVID-19 whether he is in prison or not. See, e.g., Jacques, 2022 WL 894695, at *2; Scalea, 2022 WL 795425, at *1; Shettler, 2022 WL 620311, at *4; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. And, Miller does not offer a release plan. Moreover, and in any event, the section 3553(a) factors counsel against reducing Miller's sentence. See Hargrove, 2022 WL 905436, at *3–4, 7–8; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

11

Miller is 32 years old and is incarcerated for possession with intent to distribute a quantity of marijuana and possession of a firearm in furtherance of a drug trafficking crime. See PSR ¶¶ 1–10. Miller had a package containing 4.76 kilograms of marijuana mailed to him at his house. See id. ¶¶ 8–9. In his house with his minor children, Miller had drug paraphernalia, loose marijuana, a handgun with a removed serial number, and two thirteen round magazines. See id. ¶ 9. When Miller engaged in this latest criminal conduct, Miller was a dangerous recidivist with convictions for misdemeanor possession of marijuana, misdemeanor possession of drug paraphernalia (two counts), and conspiracy to commit robbery with a dangerous weapon. See id. ¶¶ 15–17. Miller also has performed poorly on supervision. See id. ¶¶ 15–16.

Miller claims to be remorseful and to have made rehabilitation efforts while incarcerated. See [D.E. 49-1] 6. Miller also has a record of legitimate work in his family business. See [D.E. 64] 6.

The court must balance Miller's rehabilitation efforts while federally incarcerated with his serious criminal conduct, his violent criminal history, his poor performance on supervision, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); Hargrove, 2022 WL 905436, at *7–8; High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Miller's potential exposure to COVID-19, his health conditions, and his rehabilitation efforts. The court recognizes Miller has a supportive family. See [D.E. 64] 5. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Miller's arguments, the need to punish Miller for his serious criminal behavior, to incapacitate Miller, to promote respect for the law, to deter others, and to protect society, the court denies

12

Miller's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Hargrove, 2022 WL 905436, at *7–8; High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

IV.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 61], DISMISSES petitioner's section 2255 motion [D.E. 53], DENIES a certificate of appealability, DENIES petitioner's motion for compassionate release [D.E. 49], and GRANTS respondent's motion to seal [D.E. 70]. The clerk shall close the case.

SO ORDERED. This 15 day of April, 2022.

JAMES C. DEVER III
United States District Judge